May it please the court, my name is Erin Bass and I represent Lori Bell in this matter. I'm going to try to reserve seven minutes for rebuttal to address the adjacent issues. Lori Bell suffered a career-ending demotion because she is a woman. She had worked for VF Jeanswear since just after high school. She had a 29-year career for one company in the niche western wear industry that VF Jeanswear took from Ms. Bell because she's a woman. After VF Jeanswear demoted her, it denied her a lateral transfer to a position that would have been equivalent to her original position. The jury unanimously found that VF Jeanswear unlawfully discriminated against Ms. Bell on the basis of sex. This is a case that involved blatant sex discrimination. VF Jeanswear's vice president told the female client representative at Boot Barn, which was Lori Bell's client, that, quote, a male would be better for the position that it demoted Ms. Bell from. That Ms. Bell's colleagues need not worry about her losing her job because she was, quote, married now. Despite all that, the district court's back pay and by 80 percent. Back pay that she was entitled to regardless of whether she was constructed from discharge. The district court then erred by reducing her attorney's fees by 70 percent. I'm first going to address the back pay issue, then the attorney's fees issue, and then finally the issues on constructive discharge. The district court's back pay decision was based on two categories of errors. First, it abused its discretion in allowing VF Jeanswear's expert to testify. And second, it abused its discretion in finding that VF Jeanswear had met its burden to prove substantially equivalent employment. On the expert, the expert's opinions were based on no specialized knowledge and were so unreliable that the district court should have seen the testimony for what it was, a backdoor to get in otherwise completely inadmissible evidence. This is an expert whose opinion consisted of essentially handing the district court a stack of printouts from an intern's internet job search and regurgitating hearsay from recruiter's marketing material. This issue is of interest to me, but this is Mr. Curtis you're talking about, right? Correct. When Mr. Curtis was testifying just to the district court as a finder of fact, it was only the judge, no jury involved, right? Okay. So in that circumstance, isn't 702, rule 702 a little bit more relaxed? In other words, you know, maybe this guy wasn't, I'm just for the sake of argument, maybe this guy wasn't the greatest expert in the world, but it's not going to a jury, it's going to the district judge, so it's a little more leeway. What do you think about that? The primary problem is that this was VF Jeanswear's evidence on the subject. And it was the only evidence that the district court relied on to cut Ms. Bell's back paid by 80%. And his opinion is clear that he's relying on this expert's opinion, despite that this expert just basically presented what other people had said about jobs, what the internet said about jobs. He makes no effort to connect Ms. Bell's facts to the jobs that he offered. But the district judge rejected Mr. Curtis in part, I mean, he didn't just buy everything he said, right? But his entire opinion, the district court's entire opinion that there were substantially equivalent jobs available hinges on the expert's opinion. And because of what the expert relied on was so unreliable, it's so unsubstantiated, it's just hearsay. That is why the district court erred. Let's go about this from the other side, then. Can you point to any attempts by your client to try to obtain a job before August of 2015? Yes, the record shows that before August 2015, she signed up on job websites, put in filters so that they would send her jobs. She searched the internet for jobs, and she spoke with... But this was after the deposition, right? But some of it was before as well. August 2015 is when the only time period for which Ms. Bell's deposition was in March 2015. And the district court looked at Ms. Bell's job efforts only before April 2015 and after August 2015. It did not look at the same time period for which DFJ offered substantially equivalent employment. And there is evidence that she did search for jobs. Even if you accept the district court's opinion that it wasn't reasonable, there is no evidence in the record from which the district court could have found that there was substantially equivalent employment available to Ms. Bell. Let's look at the big picture. I mean, I think the problem I've had here is that she's seeking full pay for a period that amounts to eight years and 10 months, as if she couldn't be employed by anybody else in an acceptable position. And that's just hard to believe, if she's as capable as she proclaims to be. She didn't make much effort to find another job. The defense didn't put up much of evidence on that. Neither side seemed to take this issue very seriously. And I used to try cases. I understand that that wasn't the focus of the efforts. But now we're looking at a question of, is it reasonable for her to be paid for nearly nine years on the premise that she couldn't get another job? And that seems like kind of a stretch. The primary issue here is that it's DFJ's burden to prove both that there was... You're not answering my question. Is it logical to think that she couldn't find another job over a period of nearly nine years? Yes, because she had a very unique position in a unique industry. A lot of people are out of work these days and they may not be able to get exactly the job they used to have. And I don't know the law says that she's entitled to get exactly the job she used to have. She has to mitigate. I don't see much in the way of mitigation. So what's the logic behind her getting paid for nine years? Because under Title VII, once she is discriminated against, back pay is the rule. And mitigation is the rule. And she apparently made a little effort to mitigate. And I don't know why we should assume she couldn't mitigate. Because it is DFJ's burden to prove that there were jobs out there that she could have gotten. And it has not... Every single job that it offered has a fatal flaw to it. And substantially similar employment, despite not identifying a single substantially equivalent job. The fact that there were no substantially similar jobs available, I think speaks to how unique Ms. Bell's position was. And if this was so simple that she could have just gone out and gotten another sales job, I think that eviscerates policy behind Title VII. But at the very least, DFJ should have been able to identify one job. And he has identified zero. And it says nothing about this. In its briefs... Well, wait a minute, wait a minute. Yeah, I know you don't like what Curtis said. But he said what he said. And he listed, I forget how many, like 40 jobs. Well, let's just assume for a moment that he did, the district court did correctly admit his that DFJ did not show that she failed in many cases. Because it identified zero substantially equivalent jobs. Of those 40 jobs that it put into evidence, every single one has a fatal flaw. And we're not talking about small differences here. And did you argue that in court? Yes, this was briefed to the court. All 40 jobs were located in another state or did not list the location. And DFJ didn't offer any evidence to suggest where those jobs without a location were located. Or that Ms. Bell could have done those jobs without moving from her home in Phoenix, Arizona. Again, this is DFJ's burden. The law is crystal clear on this. But it has to come forward with evidence. And there is no evidence in the record. Well, the law is... What's the standard of review we're supposed to apply to the district court's finding? It's abuse of discretion. But if there is zero evidence in the record from which it could have come to this conclusion, it has abused its discretion. Keep in mind that Ms. Bell, DFJ demoted her when she was in her late 40s. And she had spent her entire career, since just after high school, working for the Western industry. And DFJ is offering jobs that require extensive experience in the wireless retail industry or seven years experience in the shoe industry. It completely eviscerates Title VII to say that Ms. Bell could have just gone out and got one of these other sales jobs. And if that were true, it was DFJ's burden to put that evidence into the record. In fact, DFJ's own expert testified that by August of 2015, again, this is the only time period, this two-week time period for which DFJ has identified jobs that were available, that by that time period, Ms. Bell's chance of getting a callback, let alone a job, had diminished by 45%. And again, DFJ has said nothing about this issue in its briefing. It has effectively conceded that none of these jobs were substantially equivalent, but they all suffer from fatal flaws. Can I ask you, on this issue, what are you asking us to do? Are you asking us to vacate the back pay and enter a full amount for the eight plus years that Judge Clifton mentioned, or are you asking us to remand the district court for further consideration? No remand is necessary here, or no remand would be appropriate because there is no evidence in the record. Remand would be futile, so this court should enter an order awarding her the full back pay and front pay. And any perceived unfairness about the amount should fall on DFJ. It's the one that's violated the law. Ms. Bell is the one who lost her career because of DFJ's discrimination. I want to move on to the fee issue. The district court erred in cutting Ms. Bell's fees request by 70% for two massive across-the-board percentage cuts. The first cut, when it cut the lodestar amount by 40% of what Ms. Bell's attorneys actually spent, the district court's reasons are unsubstantiated in the record, and they blamed Ms. Bell for DFJ's litigation conduct. The prime example on both of those points is that the district court blamed Ms. Bell for the fact that a single damages issue was briefed 14 times. This was DFJ's argument that it continues to press on appeal that Ms. Bell should recover zero dollars in back pay. DFJ raised that argument in the first instance in seven separate briefs, and it briefed it in a total of 11 separate briefs. In contrast, Ms. Bell raised that issue in the first instance only once in the brief following the bench trial on her equitable relief, which is the exact place you think this issue should be raised. As another example of the record of how DFJ litigated this case in a way to make it more expensive for Ms. Bell, DFJ refused to admit that it demoted Ms. Bell. Despite its own manager admitting that this was a demotion, it required her to prove this issue at trial. We're here on You know, this judge lived with this case for a long time, as you did. He was there every step of the way, and he wrote an order where he went through and took samples of examples of things that he thought you would relitigate it unnecessarily. Those are motions for reconsideration. They weren't just responding to what your opponents were saying, and a bunch of other things that originated with you, not reacted by you, but originated with you. And he said, after looking at all that whole record and being there every day, he said, I think about 40% of this case was unnecessary. What's wrong with that? I mean, why is that an abuse of any kind of discretion in awarding fees? Because his reasons for doing so were unsubstantiated. I'm looking at his order, and he goes on for at least three pages detailing his reasons for why you were wrong. And if you look at those reasons, they are not backed up in the record. You know, he identified only $49,000 in fees that he thought unreasonable. In this entire case, only $49,000 in fees. That was the motion for reconsideration and the post-judgment motion. He was describing that. He said, these are samples. He was very clear about that. He didn't say, he said the opposite. He said, I'm not going to do a line by line analysis, but here are a sufficiently large number of samples for me to feel comfortable saying about 40% of what the plaintiff did was unnecessary. He doesn't have to go line to line. Nobody has the time for that. That's an unrealistic expectation. This was not a small cut. This was a 40% cut. And some of the reasons are specifically fees that Ms. Bell spent in responding to BF James' conduct. And the lodestar is one issue. He then cut another 45% off of that amount because of what he deems to be limited in success. Ms. Bell won her jury trial. She won half a million dollars in punitive damages in a case that is notoriously difficult to win. To call that limited success is just wrong. And it's contrary to the Supreme Court's decision in City of Riverside, the Ninth Circuit's decisions in Casada and Morales. Those are cases that say unequivocally, just because you receive less damages than you originally sought does not mean that the lodestar amount can be reduced. And that's especially true in civil rights cases. Can I just ask you this question? Do I understand correctly that Ms. Bell paid more than a million dollars in attorney fees out of her own pocket? That is correct. The record shows she paid $1.1 million out of her own pocket for her attorneys. Wow. She's got nothing out of this case, though. That's exactly right. She is in the hole because of this case. I'd like to reserve the remaining four minutes for rebuttal. Very well, Mr. Hartzell. May it please the court. Sam Hartzell for BF Jeanswear. Ms. Bell was, in many respects, a talented salesperson. That's why Jeanswear chose her in 2007 for a sales role. But over the course of years, her client's needs changed. And in 2014, Jeanswear told Ms. Bell that it was transitioning her to another sales role with the same target compensation. This appeal turns on three choices that Ms. Bell made in response to that transition. First, she decided to resign because she wanted a different $113,000 a year sales job. Second, after resigning, she failed to look for work. Both of those decisions is a total independent bar to back pay in this case. The third decision that Ms. Bell made is she authorized her attorneys to spend nearly $2 million suing Jeanswear in this single plaintiff employment case where she achieved only limited success. Now, Ms. Bell's argument on appeal is that you should ignore her choices. You should overrule your precedents and substitute your judgment for that of the district court, all because Ms. Bell prevailed on one of her five employment claims. But the law, the policy supporting Title VII, the one claim on which she did achieve partial success, do not support Ms. Bell. This court and the Supreme Court have recognized that the goal of voluntary compliance and jobs, not lawsuits. We don't know what Ms. Bell could have accomplished in her job at Jeanswear because she quit as soon as she learned that she would be selling Jeanswear's products to a different set of customers. And we don't know her job. What's your best argument that under the circumstances, Ms. Bell is not entitled to Now, that is a rule this court has stated and applied at least three times. It first stated the rule in the Heekney case. That's 1981, Presidential Ninth Circuit opinion, Title VII case. That was a woman who resigned because she was paid less than her male colleagues. And this court held she was ineligible for back pay because she was unable to show constructive discharge. Three years later, in the Satterwhite case, the court stated the rule directly and succinctly. An employee who quits cannot secure back pay unless his employer constructively discharged him. And six years after that, in Sanchez, this court applied that rule in the demotion context. Now, Ms. Bell's argument boils down to the idea that that's unfair to her. But this court has explained that limiting back pay has legitimate policy reasons. In particular, this court has said twice, and I quote now, the purposes of Title VII are best served when the parties, where possible, attack discrimination within the context of their existing employment relationships. An employee faced with an obstacle in the logical progression and development of a career should not quit at the first sign of institutional discrimination. That's what Ms. Bell did here. As soon as she learned that she was being transferred from an account executive position to a field sales representative position, she quit. Is that a demotion? It's a difficult question to answer for this reason. It's not that hard a question to answer if you look to your own witnesses. There is evidence in the record. Part of the problem I have here is that you seem to be in denial about the fact that we do have a finding that doesn't seem to be contested as to sexual discrimination. And the situation screams out not transfer, but demotion. Is there any authority that says even at the event of demotion, an employee is supposed to stick around and bear with it? Yes. So as a general rule, the constructive discharge rule has only one exception, and that is failure to promote where the employee is trying to enter an entirely different career, something as different as clerk, typist, police officer, laundry accountant. There is no exception for demotion. And most importantly, in Sanchez, that was a case in which the plaintiff was demoted. This court found as much that his reduction in merit pay was a demotion. And this court went on to state that an employee who resigns as Sanchez did cannot secure back pay unless his employer constructively discharged him. And Judge Clifton, the reason it's a difficult question to answer whether or not it was a demotion is there's no standard for what qualifies as a demotion. What Ms. Bell is trying to do here is pigeonhole the word demotion into the Supreme Court's explanation in Ford Motor Company. But when the Supreme Court uses the word demotion there, what it is talking about is a job that is not substantially equivalent. The kind of job that is so different in kind that an employee who had been terminated would have no obligation to take it. This is not a demotion in that sense. Well, somebody whose salary, whose compensation is driven in large part on a commission system would have reason to be concerned if shifted from what is it like a $26 or $28 million annual sales account to an account executive position dealing with Arizona vendors that have maybe like $2 million in sales. It may be that the company said, well, your base is going to be the same for the first year, but it doesn't take reading tea leaves to figure out what the future is going to bring. Yes. Given that the person that was was put into the position that she wanted to keep, away from positions she wanted and couldn't be given, that was called a promotion. It's hard not to see what happened to her was a demotion. The company's failure to acknowledge that really is kind of troublesome. It was a promotion in the sense that the other employee had his target compensation increased. Ms. Bell did not have her target compensation decreased. Now, it's undisputed that Ms. Bell working on a commission system, what did you think was going to happen to her compensation in the future? Because the compensation rate, yes, it depends on sales. There's also a modifier. That is the percentage of commission she earns. Jeanswear dramatically increased the amount, the percentage that she would earn on the sales in Arizona. So, yes, it is true. It was a smaller volume of sales in Arizona, but her target compensation remained unchanged. And indeed, if we hold those facts constant and look what actually happened, she would have made more money in Arizona based on the performance of that territory than she would have in working for Boot Barn. So, yes, it was... That might tell us is the people put into the Boot Barn positions didn't do a particularly good job. That's possible. Two of the three people did remain the same, but we're necessarily in a counterfactual world because we don't know what Ms. Bell would have accomplished in the Arizona field sales representative role. And I would focus your attention on the Poland case where this court held that evidence of transfer and demotion is insufficient as a matter of law to show constructive discharge. So even if this transfer was a demotion in the fullest sense of the word, in that case, Poland, that was an employee who lost his supervisory responsibilities. That would still be insufficient to show constructive discharge. And if it's insufficient to show constructive... Nobody's effecting constructive because constructive discharge is what this back pay turns on. The combination of resignation and no constructive discharge means she's categorically ineligible for back pay. And that's true, again, from Higney, from Satterwhite, and Sanchez. The district court's reasoning in awarding back pay despite those two things I just said, despite her resignation, and despite the absence of constructive discharge, was to rely on the Supreme Court's opinion in Ford Motor Company. Ford Motor Company was a decision about failure to hire. There was no discussion in that case about termination, resignation, constructive discharge. It simply was not at issue. But in the course of its opinion about the failure to hire, the Supreme Court did say that an unemployed or underemployed plaintiff, or claimant in that case, need not go into another line of work, accept a demotion, or take a demeaning position. Now, that line does not apply because Ms. Bell was not unemployed or underemployed until she quit her job with Jeanswear. And in the years since Ford Motor Company, this court has continued to apply the constructive discharge rule, including in cases of demotion. That was true in Sanchez. That was eight years after Ford Motor Company. And this court applied the constructive discharge rule to a plaintiff who had been demoted. And it was... in Thorn. Now, Thorn is a case in which the court found that one exception to the constructive discharge rule. That is, the plaintiff was seeking an entirely different career. But before going on to explain why that exception was appropriate, the court said that the mere fortuity that Ms. Thorn, the plaintiff, had a pre-existing employment relationship, did not take the case outside of the promotion or demotion cases that apply the doctrine of constructive discharge. And again, that was after Ford Motor. The district court, Ms. Bell, and Jeanswear have not identified a single case in which any court of appeals has said there is an exception for demotions, much less demotions of this potential character. If it is a demotion, it's a very slight demotion. It is changing the clients that Ms. Bell is serving, even though it's the same products, the same salary, the same location. And yes, there was not a guarantee beyond the first year of what her compensation would be, but no salesperson ever got that guarantee. Target compensation was set one year at a time. And we might hypothesize about what could have happened the year out, but we don't know the answer because she removed herself from Jeanswear. In doing so, she forfeited any right to back pay. And the absence of any case recognizing an exception for demotion cases is notable given how well-established the constructive discharge rule is. On page 32 of our opening brief, we collect cases from the first, third, fifth, sixth, seventh, eighth, and tenth circuits. This is a widespread rule, but there's been no exception for demotion cases. But let's say for the sake of discussion that your honors disagreed with us and were to hold that in this circumstance, Ms. Bell is entitled to back pay despite her resignation. She would still be categorically ineligible for back pay because she failed to look for work with reasonable diligence. Now, Ms. Bell has a burden under Title VII based on ancient principles of law to mitigate her damages with reasonable diligence. And while it is Ms. Bell's burden to mitigate, it is Jeanswear's two elements. It has failure to seek employment with reasonable diligence, and it has the availability of substantially equivalent jobs. Now, the district court found as a matter of fact that Jeanswear had shown both elements as of August 2015, and that Ms. Bell had never exercised reasonable diligence. In the 13 months between her resignation... And I'm deciding that the district court relied entirely on Mr. Curtis, right? That's right, your honor. I have to be honest with you. I'm having trouble seeing how Mr. Curtis is an expert. An expert is no strict definition, as you know, but they have to know something that you and I don't. And as far as I can tell, Mr. Curtis is not a vocational expert. He's not a recruiting or placement expert. He's not a headhunter expert. He described himself as an economist, and the record indicates, at least as far as I saw, he spent a little time fishing around on the internet, and he called an HR person at the company. That is something that you and I could do. Anybody in your office could do. My college-aged kids could do. How is he qualified to be an expert? And if he's not qualified, then the district court had no evidentiary basis for concluding that there were substantially equivalent jobs as of the end of August of 2015. Is that right? To the final question, there was other evidence in the sense that Ms. Bell applied for not a single job until her deposition, and then as soon as that... I'm not talking about that. Two different problems. I'm just talking about the substantially equivalent jobs problem. My apologies. Where I was going with that, your honor, is as soon as she's confronted, then she starts applying for jobs. She identifies 15, 17 jobs that she says are suitable. The district judge said he was relying entirely on Kirk, so that's in one of his orders. Why is this man an expert? Why was he allowed to enter the district court and say, I'm an expert? Because of his specialized economic knowledge about the labor market. Your honor is right. It was a close call, but this is a discretionary decision for the judge. It's particularly discretionary when it's a bench trial. This is not a case... I appreciate that. I raised that point earlier, and I appreciate you're saying it was a close call. I think you're right. I don't understand how the call came out the way it did is what I'm saying. He didn't show any specialized knowledge. He went on the internet. He spent five hours on the internet, and he talked to an HR person. What's specialized about that? He didn't bring any expertise. He just made some calls and looked on the net. What am I missing? Why is he an expert? He's an expert because of the context he provided for those searches. It is notable that it only took him five hours to find 40 available jobs. I think the point that shows is this is not a hyper-specialized industry. This is a sales job. Even if you were to hyper-define it as a sales job selling Western ware in Arizona, this is the kind of thing that's easy to find other jobs available in that industry. What I really want to emphasize, though, is this is two steps removed from the starting point. You have to move past the constructive discharge rule and find that her failure to seek with reasonable diligence is not a total bar. A series of circuit courts have addressed that question. What happens when a plaintiff acts without reasonable diligence, but for the sake of discussion, jeans wear fails to carry its burden? With the exception of one court, one opinion, every single court of appeals to reach that issue has said the employer is unqualified. The response to that is, well, the Ninth Circuit has said there's two prongs, and that's true, but each one of those other court of appeals that have also relieved the employer also had two prongs. You can see that perhaps most clearly in the Second Circuit's Greenway decision, where the court says the employer has the burden to show lack of reasonable diligence and no substantial equivalent jobs, but if the employee fails to act with reasonable diligence, the employer is relieved of its duty. The one exception to that is the Seventh Circuit case that's an outlier. The parties in that case did not seek rehearing en banc or certiorari. It is against a wall of precedent, including precedent from the NLRB, the D.C. Circuit interpreting the NLRA. There's a virtual consensus that when an employer, like jeans wear, shows a lack of reasonable diligence, the employee should not be able to get back pay. And that accords with common sense. I mean, the goal of Title VII is to make the plaintiff whole. If the plaintiff does not seek other jobs, sits at home, and rather than going out to look, that is not making her whole. It's giving her a windfall. And the decision here was particular. You say it's common sense. I mean, there are no jobs in the field. Why would you require someone to go out and look? I mean, you have to have both. You got to show that there were some jobs and you were not diligent. You can only be diligent if you have the possibility of getting a job. So you need both prongs. And certainly the ODIMA decision says that. I mean, I don't know how you get around that. It does, but again, if following Judge Donato's point, if we discard Mr. Curtis's testimony, I just arguendo, in what way did the company show that there were jobs out there, substantial equivalent jobs? As a district court found, we showed that through Mr. Curtis's testimony. But without that, I think Ms. Bell's testimony herself would show the availability of other jobs. The district court did not consider that ground, so a remand would be appropriate. But to respond to your question, Judge Donato, all of these circuits that have discarded the requirement, ultimately that's based on the D.C. circuit's holding, based on NLRB precedent. I'm quoting now from NLRB versus Madison Courier, 472 F2nd 1307. And the D.C. circuit explained that employer is not under the severe burden of establishing that a particular discriminant would have located suitable interim employment had he only made the required effort. When the employer lacks diligence, the available circumstances of a scarcity of work and the even with the use of diligence is irrelevant. That's an NLRB case of American bottling. And I agree with you, there is tension between saying, hey, there's two elements, and then a court saying, but we're going to relieve you of one if you show the other. But that is what all the court of appeals have held with the exception of the 7th circuit. And I direct your honor's attention to the Greenway decision where the court says, the employer must demonstrate, I'm quoting now, the suitable work existed in the marketplace and that its former employee made no reasonable effort to find it. But the court goes on to say that an employer is released from the duty to establish the availability of comparable employment if they can prove that the employee made no reasonable efforts to seek such employment. That's the rule that I'm advocating this court adopt. And I acknowledge it has not adopted that rule yet, but nor has it rejected it. The only time that it's come close to considering it in the Odema case, the court said we need not reach that question because Ms. Odema did not fail to look for work. Well, Ms. Bell did fail to look for work. The district court found that as a factual matter following a bench trial. And so if this court were to hold that her resignation without constructive discharge were not a bar, and again, that's our strongest argument, that's why she's eligible. But if this court were to look past that and consider whether she mitigated with reasonable diligence, the court should adopt the same rule that every other court of appeals, with the exception of the Seventh Circuit, has adopted. Now, instead of looking for work, what Ms. Bell did is she set up consulting jobs for her family and friends, and she spent nearly $2 million suing Jeanswear. The district court explained why it found that amount of money, the time was unreasonable. And I think the court should focus there on the attorney's fee application, $183,000 just for the application. Do you agree with what your colleague said, which is she won her case and she's actually $100,000 in the hole because of it? I don't know how much money Ms. Bell has spent on her attorneys. I have no reason to doubt it, but the district court here awarded her $600,000 in attorney's fees. If she is worse off, it's because of the amount of money her attorneys billed her for this order. Thank you, Your Honors. Thank you very much. All right, Ms. Bass, were you available? Your Honor, I first want to direct you to the district court's decision on back pay, which is 1 ER 25, where the district court specifically found that this position was a demotion, that going from an account executive to a field sales representative was a demotion that she was not required to accept to mitigate her damages. And it was, quote, a qualitatively worse working situation, a loss. You heard what your opponent said about the law, both in terms of the situation where there's no constructive discharge. And if you ignore that, what happened in terms of trying to find no job, apologize for my voice, by the way. How do you respond to his arguments about the cases that he cited? The United States, he's just wrong on the law on this, on whether you can get back pay if there's not been a constructive discharge. Which, by the way, the district court did incorrectly find, but this court need not reach that assuming it rejects EFJ's argument. Yeah, but he cited some cases on both ends of his argument, indicated that most courts of appeal had adopted them. Can you examine those cases for us and tell us how did he miss it? Was he wrong? Yes, we go through each and every case in our briefing, but I want to point you to a couple in particular. First, in the Satterwhite case, the portion he relies on is one sentence in a footnote. And Satterwhite cites only to Mueller. Mueller is a failure to promote case, as is Satterwhite. So they do not control in a demotion. Thorn, which comes after Satterwhite, makes it very clear that the relevant inquiry is mitigation. Thorn specifically discusses Watley, which is a 10th circuit case that involves an employee who resigned after a demotion and the court awarded back pay. And the court also discusses Sankster, which is a case that involves an employee who resigned after she was denied a transfer. It was actually a transfer to a lower position, but she was denied a transfer and resigned. And the district court, the ninth circuit doesn't say that that's a first aid bar to back pay. Instead, it goes on to analyze the mitigation issue. Again, the relevant inquiry is mitigation. Sanchez, this case that Mr. Hartsell cited, that he says involved a demotion. All it involved was a reduction in pay. It didn't involve what was effectively a career-ending demotion for Ms. Bell, or as the district court put it, a qualitatively worse working situation. And I want to emphasize, VFJ has not challenged that finding on appeal. In fact, VFJ doesn't address either Sankster or Watley in its briefing. Or Carrero, which is another second circuit case that awarded back pay following resignation, awarded back to an employee who resigned following that employee's demotion. All of those cases are on point and agree that the issue is mitigation. Mr. Hartsell has made a reference to the US Supreme Court's statement in Ford Motor v. EEOC, where he says that case is distinguishable because it applies only when a claimant is unemployed or underemployed. She had been demoted, she was told to take the demotion or be fired, and she resigned under protest because she didn't want to be fired. I want to address the issue that VFJ... You're almost out of time, so wrap it up pretty quickly, okay? I just want to point, VFJ cannot meet its burden by pointing to the jobs that Ms. Bell applied for. Just because she went to apply for other jobs when she couldn't find a substantially equivalent employment, doesn't mean that those meet the test for substantially equivalent employment. So no remand is necessary there. And the point on the two prongs, VFJ also does not dispute that the law requires that it had to prove both prongs of the mitigation test for the same time period. That is made clear in the Udima case and in the EEOC v. Papert case, a case that VFJ never even addresses in any of its briefs. And with that, unless you have other questions, I'll just ask the court grant the relief that Ms. Bell has requested and deny VFJ's appeal. Very well, thank you both for your argument. I appreciate it very much. The case just argued is submitted and the court stands in recess for the day.
judges: Clifton, M. Smith, Donato